# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SENECA INSURANCE COMPANY, INC.,**<br>    **PLAINTIFF,**<br>    v.<br>**CYBERNET ENTERTAINMENT, LLC, ET AL.,**<br>    **DEFENDANTS.** | **CASE NO.** 16-cv-06554-YGR<br><br>**ORDER DENYING CYBERNET ENTERTAINMENT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING THIRD PARTY DEFENDANT STATE COMPENSATION INSURANCE FUND'S CROSS MOTION FOR SUMMARY JUDGMENT** |
| **CYBERNET ENTERTAINMENT, LLC,**<br>    **THIRD PARTY PLAINTIFF,**<br>    v.<br>**STATE COMPENSATION INSURANCE FUND,**<br>    **THIRD PARTY DEFENDANT.** | **DKT. NOS. 61, 64, 68** |

This action arises out of three lawsuits filed by plaintiffs John Doe, Cameron Adams, and Joshua Rodgers in San Francisco Superior Court (the "State Court Actions") against defendants Cybernet Entertainment, LLC, *et al*, alleging that plaintiffs suffered injuries which include infections of the human immunodeficiency virus ("HIV") while performing in adult films produced by Cybernet through its website, Kink.com (collectively "Cybernet").

Cybernet and third-party defendant State Insurance Compensation Fund ("State Fund") have filed cross-motions for summary judgment on State Fund's duty to defend Cybernet in the State Court Actions.[1] Cybernet argues that State Fund has a duty to defend Cybernet because a

---

[1] On May 23, 2017, Cybernet filed its motion for partial summary judgment. (Dkt. No. 61.) Cybernet has also submitted documents for judicial notice in connection with the motion. (Dkt. No. 64, Request for Judicial Notice ("RJN").) These documents include the First Amended Complaints for Damages filed in San Francisco Superior Court by Doe, Adams, and Rogers, respectively; Cybernet's demurrers to each; and (iii) the San Francisco Superior Court's order overruling the demurrers to each. In light of State Fund's non-opposition, the Court **GRANTS** Cybernet's request for judicial notice, but does not accept the truth of any matters asserted in the

potential for liability exists under the Workers' Compensation and Employer's Liability Insurance Policy (the "Policy") which State Fund issued to Cybernet for the policy period during which plaintiffs were allegedly injured. (*See* Dkt. No. 63-4.) State Fund seeks a contrary ruling.[2] (Dkt. No. 68.)

Having carefully considered the pleadings and fully-briefed motions, the hearing held on July 18, 2017, and for the reasons set forth below, the Court **GRANTS** State Fund's motion for partial summary judgment and **DENIES** Cybernet's motion for partial summary judgment. In summary, the Court **FINDS** that State Fund has no duty to defend Cybernet because either (i) plaintiffs' claims are exclusively governed by California's workers' compensation system or (ii) the claims which allege Cybernet intentionally caused damages pursuant to the Policy are barred thereunder.

## I. RELEVANT BACKGROUND

Unless otherwise stated, the facts set forth below are undisputed.

Cybernet produces adult content for publication on the internet through its website, Kink.com. (RJN ¶ 1, Ex. 1, ¶ 23.) Kink.com specializes in depictions of various sexual fetishes including bondage. (*Id*.) Cybernet provides its workers with an "Injury and Illness Prevention Plan" that instructs cast and crew members on how to film safely. (Dkt. No. 61, Declaration of Karen Tynan ("Tynan Decl."), ¶ 10.) Cybernet also requires performers to fill out "Limits Sheets"

---

documents. The Court gives such documents their proper evidentiary weight.

[2] Cybernet filed its opposition and cross motion on June 20, 2017. (Dkt. No. 76.) In its cross motion, Cybernet raised evidentiary objections to the declaration of Emily Carpio pursuant to Federal Rules of Evidence 602 and 701. (Dkt. No. 71, Declaration of Emily Carpio ("Carpio Decl.").) Specifically, Cybernet challenges Ms. Carpio's statement that State Fund will pay out additional benefits "should [plaintiffs] prove" in their respective Workers' Compensation Appeals Board ("WCAB") actions that plaintiffs "suffered additional occupational injury/disease in the course and scope of [their] employment." (*Id*. ¶¶ 6, 11, 15.) Cybernet argues that such testimony is inadmissible because it lacks foundation, is not based on personal knowledge, and speculates as to future events.

Cybernet does not persuade. Ms. Capio is a certified workers' compensation claims adjuster employed by State Fund. (*Id*. ¶ 1.) Her testimony describes State Fund's policies and practices regarding payment of workers' compensation benefits. As a workers' compensation claims adjuster for State Fund, Ms. Capio has personal knowledge of such policies and practices. Accordingly, Cybernet's objections are **OVERRULED.**

2

which describe the types of activities that cast members are comfortable performing. (*Id.*) Cybernet maintains several insurance policies including the Policy at issue. (Tynan Decl. ¶ 3.) The Policy covers two types of liability, namely workers' compensation ("Part One") and employer's liability insurance ("Part Two"). (Dkt. No. 63-4.)

Plaintiffs are adult film actors who allegedly became infected with HIV between May and August, 2013, while performing in films produced by Cybernet. (RJN ¶ 1-3, Exs. 1-3.) Plaintiffs allege that they were injured in the course and scope of their work for Cybernet. (Dkt. No. 85, Declaration of Jennifer D. Wellman ("Wellman Decl.") ¶¶ 2-4, Exs. A–C.) Plaintiffs initially filed claims with State Fund seeking workers' compensation benefits for their alleged injuries. (Dkt. No. 70, State Fund Separate Statement of Undisputed Material Facts and Additional Material Facts ("State Fund SSUMF") No. 2.) State Fund accepted all three claims for the purposes of adjusting the claims and paying benefits. (*Id.* Nos. 3, 4.) State fund paid a portion of Adams' and Doe's claims, but denied liability for Rogers' claim and the remainder of the other plaintiffs' claims. (Tynan Decl. ¶¶ 2, 6, 7.) In October 2014, plaintiffs filed separate applications with the WCAB disputing State Fund's partial denials of their claims which are currently pending. (Carpio Decl. ¶¶ 4, 9, 14.)

In June and July, 2015, plaintiffs filed the State Court Actions. *See John Doe v. KINK.COM, et al.*, San Francisco Superior Court Case No. CGC-15-545540; *Cameron Adams v. KINK.COM, et al.*, San Francisco Superior Court Case No. CGC-15-547035; *Joshua Rodgers v. KINK.COM, et al.*, San Francisco Superior Court Case No. CGC-15-547036 (RJN ¶¶ 1–3, Exs. 1–3.) State Fund initially agreed to defend Cybernet in the State Court Actions subject to a reservation of rights. (Tynan Decl. ¶ 3.) In September 2015, Cybernet demurred on the grounds that California's workers' compensation exclusive remedy provision barred plaintiffs' claims. (RJN ¶¶ 4–6, Exs. 4–6.) The State Court overruled the demurrers, noting that neither the "Cal OSHA Appeals Board Decision" nor "plaintiff[s'] workers' compensation claims[s] establish" that plaintiffs were employees. (*Id.*) The Superior Court also noted that the facts alleged in plaintiffs' respective complaints "support exceptions to the [workers' compensation] exclusivity rule." (*Id.*) On December 7, 2016, State Fund withdrew its defense, citing exclusions in the Policy for claims

3

(i) covered by workers' compensation and (ii) arising from Cybernet's intentional acts.

## II. PROCEDURAL FRAMEWORK

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact as to the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party has the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249–50. Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).

//
//

## III. DISCUSSION

### A. Worker's Compensation Exclusive Remedy Provision

#### 1. Legal Framework

The Workers' Compensation Act, Cal. Lab. Code, § 3200, *et seq.*, (the "Act"), provides a comprehensive system of remedies for workers who suffer injuries or occupational diseases in the course and scope of their employment. The Act subjects employers to strict liability for industrial accidents, limits the amount of that liability, and affords employees "relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." *Shoemaker v. Myers*, 52 Cal.3d 1, 16 (1990) (citing *Cole v. Fair Oaks Fire Protection Dist.,* 43 Cal.3d 148, 160 (1987)); *see also Fermino v. Fedco*, 7 Cal.4th 701, 708 (1994); *Johns-Manville Products Corp. v. Superior Court,* 27 Cal.3d 465, 474 (1980).

Under California Lab. Code Section 3602(a), workers' compensation is "the sole and exclusive remedy of the employee . . . against the employer" for injuries, subject to certain exceptions. "The legal theory supporting the exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability." *Shoemaker*, 52 Cal. 3d at 15. "The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.'" *Id.*

Courts apply a two-prong test in determining whether an injured employee's claim is preempted by the exclusive remedy provision. First, the injury must "arise[] out of and in the course of the employment." Cal. Lab. Code. § 3600(a); *see also Shoemaker*, 52 Cal. 3d at 15. "To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment . . . ." *Torres v. Parkhouse Tire Services, Inc.*, 26 Cal.4th 995, 1008 (2001) (citing *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 298 (1995)).

Second, the acts or events giving rise to the injury must constitute "a risk reasonably encompassed *within* the compensation bargain." *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,* 24 Cal.4th 800, 819–20 (2001) (citing *Shoemaker,* 52 Cal.3d at 16) (emphasis

supplied). "If they do not, then the exclusive remedy provisions are inapplicable because the malfeasor is no longer acting as an 'employer.'" *Id*. "Employer conduct is considered outside the scope of the workers' compensation scheme when the employer steps outside of its proper role or engages in conduct unrelated to the employment." *Lee v. W. Kern Water Dist.*, 5 Cal.App.5th 606, 618 (2016); *see also Bell v. Industrial Vangas, Inc.*, 30 Cal.3d 268, 277 (1981) ("The purpose of the Act [is] to compensate for losses resulting from the risks to which the fact of employment in the industry exposes the employee."). "[I]njuries caused by employer negligence or without employer fault" are within the compensation bargain and "are compensated at the normal rate under the workers' compensation system." *Fermino,* 7 Cal.4th at 714.

*Fermino* is instructive as to the scope of the exclusive remedy provision. There, the California Supreme Court "described the circumstances where 'injurious employer misconduct,' arising in the course of employment, nonetheless remained 'outside [the compensation] bargain.'" *Ward v. Aramark, Inc.*, 1999 WL 38945, at *2 (N.D. Cal. Jan. 28, 1999) (quoting *Fermino*, 7 Cal.4th at 708). In particular, the court noted that intentional employer conduct which has "no proper place in the employment relationship" falls outside the compensation bargain. *Fermino*, 7 Cal.4th at 717-18. In holding that plaintiffs' claim for false imprisonment was not barred by the exclusive remedy provision, the *Fermino* court stated "there are certain types of *intentional* employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought. *Id*. at 713–714 (emphasis supplied). Conduct outside the scope of the compensation includes acts falling within a statutory or common law exception to the exclusive remedy provision. Common law exceptions to the exclusive remedy provision include assault, false imprisonment, harassment, fraud, and wrongful termination. *Id.* at 710-712; *see also Lee*, 5 Cal.App.5th 606. Statutory exceptions include injuries caused by physical assault. Cal. Lab. Code § 3602(b)(2); *Fretland v. County of Humboldt*, 69 Cal.App.4th 1478, 1489-91 (1999); *Hart v. National Mortgage & Land Co.*, 189 Cal.App.3d 1420 (1987). Thus, the inquiry includes whether the conduct could be viewed as intentional and outside the compensation bargain.

6

**2. Analysis**

The threshold issue is whether plaintiffs' claims against Cybernet are preempted by the exclusive remedy provision. If plaintiffs' claims are preempted then the "possibility of coverage . . . sufficient to trigger" the duty to defend does not arise and State Fund is entitled to summary judgment. *See Belmonte,* 83 Cal. App.4th 433.

As set forth above, the first prong of the exclusive remedy test requires the Court to determine whether the injuries "arise out of and in the course of the employment." The parties agree that plaintiffs' injuries occurred while plaintiffs were performing in adult films produced by Cybernet. Thus, plaintiffs' injuries arose in the course of their employment and the first prong is satisfied.

The second prong requires that the employer's conduct be "within the compensation bargain." *Fermino*, 7 Cal.4th at 718. As noted "there are certain types of *intentional* employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought." *Id*. at 713–714 (emphasis supplied). In this regard, the Court considers plaintiffs' respective complaints which effectively allege two types of conduct: non-intentional and intentional. Thus: Doe, Adams, and Rogers each allege that they understood that Cybernet would require performers to use condoms and other safety barriers and "ensure that [plaintiffs were] . . . empowered to stop or alter a scene at any time." (RJN ¶ 1, Ex. 1, ¶¶ 23, 44, 49; RJN ¶ 2, Ex. 2, ¶¶ 25, 144; RJN ¶ 3, Ex. 3, ¶¶ 27, 37, 39.) Plaintiffs further aver that they experienced several incidents of unexpected and aggressive behavior which plaintiffs were powerless to control.[3] (RJN ¶ 1, Ex. 1, ¶¶ 20, 25-26, 44, 35, 38-39, 49, 55, 97-103, 108, 169-174, 180-84, 189; RJN ¶ 2, Ex. 2, ¶¶ 22, 27, 30-32, 35, 45, 47, 49, 84-90, 95, 182, 186, 188, 191; RJN ¶ 3, Ex. 3, ¶¶ 25, 29, 41, 43, 37, 84-88, 93, 95, 102, 105, 155-5.) Plaintiffs assert that each

---

[3] These incidents include (i) Doe's performance, over objections, of oral sex on an individual that had an open wound and who was not wearing a condom; (ii) Adams being forced to engage in nonconsensual sexual acts which included fisting, spanking and being hit with a cattle prod and which exposed Adams to open wounds; and (iii) Kink.com's failure to follow proper protocols associated with exposure to blood borne pathogens after a performer ejaculated into Rogers' eye.

7

contracted HIV during the above-referenced incidents and that they were not the type of performances in which plaintiffs had agreed to perform. (RJN ¶ 1, Ex. 1, ¶¶ 21-25; RJN ¶ 2, Ex. 2, ¶ 25; RJN ¶ 3, Ex. 3, ¶¶ 27-28.) Plaintiffs also allege that they believed Cybernet had a strong reputation for "respectful and fair treatment" supported by an extensive "Injury and Illness Prevention Plan" and "Limits Sheets" designed to prevent the type of nonconsensual incidents to which plaintiffs were exposed. (RJN, ¶ 1, 2; Ex. 1, ¶ 23; Ex. 2 ¶ 30.) Plaintiffs argue that subjecting plaintiffs to non-consensual sexual acts and exposing them to HIV are not "risks to which the fact of employment in the [adult film] industry exposes the employee." *See Bell,* 30 Cal.3d 268, 277 (1981). Further, these incidents have "no proper place in the employment relationship" and indicate that Cybernet stepped "out of its proper role" as plaintiffs' employer such that the conduct was "beyond the boundaries of the compensation bargain." *Fermino*, 7 Cal.4th at 713-14, 717.[4]

---

[4] State Fund also argues that the exclusive remedy provision "encompasses any injury 'collateral to or derivative of' an injury compensable under the workers' compensation law." *Singh v. Southland Stone, U.S.A.,* Inc., 186 Cal.App.4th 338, 365 (2010) (quoting *Vacanti v. State Fund*, 24 Cal.4th 800, 813 (2010)). However, State Fund fails to show how plaintiffs' contracting HIV as a result of Cybernet's alleged conduct during the above-referenced incidents was "collateral to or derivative of" an injury "compensable under the worker's compensation law." *Id.* The Court finds that plaintiffs' injuries arising out of the above-referenced incidents are discrete injuries caused by specific conduct. Such injuries were thus not collateral to or derivative of a compensable injury.

State Fund further argues that plaintiffs' injuries are within the compensation bargain because the injuries occurred while plaintiffs were working for Cybernet. State Fund does not persuade in light of *Fermino*, 7 Cal.4th at 710-712, and *Lee*, 5 Cal.App.5th at 606. In each of these cases, the court found that plaintiffs' injuries, which occurred while plaintiff was on the job, were not within the compensation bargain due to the nature of the employer's conduct in causing those injuries.

Finally, State Fund claims that plaintiffs' claims are preempted because plaintiffs have also brought claims before the WCAB. Relying on *La Jolla Beach and Tennis Club*, State Fund argues that the same claim cannot be simultaneously adjudicated by the WCAB and San Francisco Superior Court because this would allow for dual recovery. *See La Jolla Beach and Tennis Club, Inc. v. Indus. Idem. Co.*, 9 Cal.4th 27, 35-36 (1994) (finding that a state court and WCAB did "not have concurrent jurisdiction over the whole of the controversy . . . [because] one of them will be without jurisdiction to grant any relief whatsoever.") (Internal quotations omitted). State Fund's argument fails because here there has been no determination that the San Francisco Superior Court lacks jurisdiction. Any potential for dual recovery will disappear once a determination is made as to whether the San Francisco Superior Court has jurisdiction over plaintiffs' claims.

8

With respect to plaintiffs' claims based on the intentional conduct of Cybernet, under *Fermino* these claims are not necessarily preempted by the exclusive remedy provision.[5] *See Fermino*, 7 Cal.4th at 713–14. But, here, as shown below the issue is mooted by the policy itself. Plaintiffs' claims arising from Cybernet's alleged negligence, or non-intentional acts, are preempted and no duty to defend exists with regard to such claims.[6]

### B. Duty to Defend Under the Policy

#### 1. Legal Framework

A "liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076 (1993), *as modified on denial of reh'g*). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann,* 4 Cal.4th at 1081. An insured seeking to establish that an insurer has a duty to defend the insured in litigation "must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Montrose*, 6 Cal.4th at 300.

"The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." *Id.* An insurer can avoid the duty to defend only when the insured "*can by no conceivable theory raise a single issue which could bring it within the policy*

---

[5] *See* RJN, Ex. 1 ¶¶ 96–108 (intentional misrepresentation), 109-120 (conspiracy to commit fraud), 156–165 (intentional infliction of emotional distress); 179–189 (battery); Ex. 2 ¶¶ 83–95 (intentional misrepresentation), 96–107 (conspiracy to commit fraud), 143–152 (intentional infliction of emotional distress), 181–191 (battery); Ex. 3 ¶¶ 83–93 (intentional misrepresentation), 94–105 (conspiracy to commit fraud), 141–150 (intentional infliction of emotional distress).

[6] *See* RJN, Ex. 1 ¶¶ 79–86 (negligence), 87–95 (negligence *per se*), 121–133 (breach of implied covenant of good faith and fair dealing), 121–131 (negligence supervision), 132–143 (negligence hiring and/or retention), 153–165 (premises liability); Ex. 2 ¶¶ 66–73 (negligence), 74–82 (negligence per se), 121–133 (breach of implied covenant of good faith and fair dealing), 134–144 (negligence supervision), 145–155 (negligence hiring and/or retention), 166–178 (premises liability); Ex. 3 ¶¶ 66–73 (negligence), 74–82 (negligence per se), 106–118 (breach of implied covenant of good faith and fair dealing), 119–129 (negligence supervision), 130–140 (negligence hiring and/or retention), 151–163 (premises liability).

*coverage.*" *Id.* (Emphasis in original.) "Even the bare possibility of coverage is sufficient to trigger [the duty to defend]." *Belmonte v. Employers Ins. Co.*, 83 Cal.App.4th 430, 433 (2000) (citing *Montrose*, 6 Cal.4th 287, 300). "If coverage depends on an unresolved dispute over a factual question, the very existence of that dispute would establish the possibility of coverage and thus a duty to defend." *Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal.App.4th 1058, 1068 (2005). Once a duty to defend is established, the insurer must defend the insured against all of the claims involved in the underlying litigation regardless of whether some claims are not covered by the insurance policy. *Hogan v. Midland National Ins. Co.*, 3 Cal.3d 553, 564 (1970). However, an insurer has no duty to defend where the potential for liability is "tenuous and farfetched." *American Guar. & Liability v. Vista Medical Supply*, 699 F.Supp. 787, 794 (N.D. Cal. 1988).

"An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1038-39 (2002) (emphasis in original). Thus, the insurer must show "that the exclusion applies in all possible worlds." *Id.* at 1039.

### 2. Analysis Regarding Alleged Intentional Conduct

To the extent that plaintiffs' claims arise from Cybernet's *intentional* conduct and therefore are not necessarily preempted by the exclusive remedy provision, the issue becomes whether State Fund has a duty to defend Cybernet with regard to these claims under the terms of the Policy. The parties agree that State Fund has no duty to defend plaintiffs' claims made pursuant to Part One of the Policy. (SSUMF No. 13.) They disagree, however, as to whether State Fund has a duty to defend plaintiffs' claims made pursuant to Part Two, which provides, in relevant part:

> "PART TWO – EMPLOYER'S LIABILITY INSURANCE
> A. How This Insurance Applies
>
> **This employer's liability insurance applies** to bodily injury by accident or bodily injury by disease of **an employee**. Bodily injury means physical or mental injury, including resulting death. Bodily injury does not include emotional distress, anxiety, discomfort, inconvenience, depression, dissatisfaction or shock to the nervous system, unless caused by either a manifest physical injury or a disease with a physical dysfunction or

10

> condition resulting in treatment by a licensed physician or surgeon.
> Accident is defined as an event that is neither expected nor intended from the standpoint of the insured.
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
> 2. The employment must be necessary or incidental to your work in California.
> 3. Bodily injury by accident must occur during the policy period.
> . . . .
> **C. Exclusions**
> **This insurance does not cover:**
> . . . .
> **4. any obligation imposed by a workers' compensation**, occupational disease, unemployment compensation or disability benefits law, the provisions of any federal law unless endorsed on this policy or any similar law;
> **5. damages or bodily injury intentionally caused** or aggravated **by you**

(Wellman Decl. ¶ 5, Ex. D, Part Two, relevant provisions bolded.) Specifically, State Fund argues that it has no duty to defend because (i) Cybernet cannot established that plaintiffs were employees, and no potential for liability exits under (ii) Policy Exclusion 4, (iii) Policy Exclusion 5, and (iv) California Insurance Code Section 553.[7] Each is discussed below.

i. **Employment Status**

State Fund argues that it has no duty to defend Cybernet because Cybernet cannot show that plaintiffs were employees. The plain language of the Policy states that the Policy only applies to bodily injury by accident or disease "of an employee." State Fund highlights that Doe and

---

[7] State Fund also argues that its duty to defend Cybernet is "very narrow" because the Policy is a workers' compensation policy which gives rise to a narrower duty than other insurance policies. State Fund relies on *Producer's Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903 (1986), a California Supreme Court case which considered whether a workers' compensation and employers' liability policy extended coverage to an employer for tort liability due to injuries to a nonemployee. According to State Fund, the *Producer's Dairy* court held that an insurer's duty to defend an insured under a workers' compensation policy is not as broad as the duty to defend under other insurance policies. However, the *Producer's Dairy* court specifically declined to consider whether the insurer had a duty to defend the insured because the parties did not brief this issue. *Id*. at 908. Rather, the issue facing the *Producer's Dairy* court was whether the insurer had an obligation to *indemnify*, which is distinct from and narrow than the duty to defend. *See Borg v. Transamerica Ins. Co.*, 47 Cal. App.4th 448, 454 (1996) ("It is well settled that the duty to defend is broader than the obligation to indemnify, from which it must be distinguished.").

Rogers each alleged that they were independent contractors.[8] (RJN, Ex. 1, ¶ 21; Ex. 3, ¶ 26.) It is well settled that independent contractors are not employees. *See S.G. Borello & Songs v. Dep't of Indus. Relations,* 48 Cal. 3d 341, 350-51 (1989).

State Fund does not persuade.[9] First, all three plaintiffs have brought parallel claims for workers' compensation benefits in which they claim to have been employees of Cybernet. Second, in denying Cybernet's demurrers, the San Francisco Superior Court specifically stated that the issue of whether plaintiffs were employees remained unresolved. The fact that two plaintiffs offer mixed allegations regarding their employment status does not constitute conclusive evidence that the exclusion applies. *Atlantic*, 100 Cal.App.4th at 1038-39 (2002) (emphasis in original).

### ii. Policy Exclusion 4: obligation imposed by workers' compensation

State Fund contends that it has no duty to defend Cybernet because Policy Exclusion 4 precludes coverage for any "obligation imposed by a workers' compensation." State Fund rehashes the same arguments proffered on the issue of whether coverage is barred under the exclusive remedy provision. *See* section III.A, *supra*. For the reasons discussed above, the Court finds that plaintiffs' claims based on Cybernet's intentional conduct are not necessarily barred by workers' compensation.

### iii. Policy Exclusion 5: injury intentionally caused by employer

Next, State Fund further argues that it has no duty to defend Cybernet because Policy Exclusion 5 excludes coverage for "injury intentionally caused or aggravated" by Cybernet. State Fund relies on allegations in plaintiffs' respective complaints to argue that Cybernet engaged in conduct which was "committed knowingly, willfully and maliciously, with the intent to harm, injury, vex, annoying and oppress Plaintiff[s] and with a conscious disregard of Plaintiff's rights,

---

[8] The Court notes that Adams does not make allegations regarding employment status.

[9] As an initial matter, State Fund misconstrues Cybernet's burden. Cybernet need only show that plaintiffs *may* have been employees because a dispute as to plaintiffs' employment status creates a potential for coverage under the Policy. For instance, in *Global Hawk Ins. Co. v. Le*, 225 Cal.App.4th 593, 603 (2014), the court reversed a finding of summary judgment on the issue of whether a workers' compensation exclusion precluded coverage for a truck driver because, although the driver described himself as an independent contractor, there existed triable issues of material fact as to the driver's employment status. *Id.* at 504.

health, and safety." (RJN, Ex. 1 ¶¶ 108, 120, 165, 189; Ex. 2 ¶¶ 95, 107, 152, 191; Ex. 3 ¶¶ 93, 105, 150.) Here, the reasoning of *Michaelian* controls. There, plaintiff brought suit against her former employer for sexual harassment; assault and battery; and negligent and intentional infliction of emotional distress. *Michaelian v. State Fund*, 50 Cal.App.4th 1093. In holding that the insurer had no duty to defend with regard to plaintiff's intentional tort claims for assault and battery and intentional infliction of emotional distress, the California Court of Appeal relied primarily on an exclusion provision in the insurance policy for "bodily injury intentionally caused or aggravated" by the employer. *Id.* at 1099. Notably, the policy exclusion for intentional conduct at issue in *Michaelian* is identical to Policy Exclusion 5 at issue in this case. Thus, on this ground, the Court finds that no potential for coverage exists with regard to injuries *intentionally* caused by Cybernet in light of the plain language of the Policy.

Cybernet argues in its supplemental brief filed on July 21, 2017, that *Michaelian* is distinguishable because here plaintiffs also allege non-intentional torts, namely negligence, negligence *per se*, negligent supervision, and negligent hiring and/or retention. (Dkt. No. 98 at 2, *see also* RJN, Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1.) However, Cybernet overlooks the fact plaintiffs' claims arising from these non-intentional torts are preempted by the exclusive remedy provision and thus State Fund has no duty to defend with regard to such claims. *See Fermino,* 7 Cal.4th at 714; *see also Section III, supra*.

### iv. California Insurance Code Section 553

Finally, State Fund argues as an alternative ground that California Insurance Code Section 553 bars coverage for "loss caused by the willful act of the insured." A "wilful [sic] act within the meaning of section 533 is more than conduct amounting to conscious or reckless disregard of the safety of others." *Transp. Indem. Co. v. Aerojet Gen. Corp.,* 202 Cal.App.3d 1184, 1188 (Ct. App. 1988) (citing *Peterson v. Superior Court* (1982) 31 Cal.3d 147, 158). "Indeed, the clear line of authority in this state is that even an act which is 'intentional' or 'wilful' within the meaning of traditional tort principles is not a 'wilful act' under section 533 unless it is done with a 'preconceived design to inflict injury.' *Id.* (quoting *Clemmer* v. *Hartford Insurance Co.*, 22 Cal.3d 865, 887 (1978)).

13

State Fund seeks judgment on the basis that plaintiffs allege that Cybernet acted "with the intent to harm, injure, vex and annoy and oppress." (RJN, Ex. 1 ¶¶ 108, 120, 165, 189; Ex. 2 ¶¶ 95, 107, 152, 191; Ex. 3 ¶¶ 93, 105, 150.) However, such allegations are insufficient to satisfy Section 553 because there is no indication that Cybernet acted with a "preconceived design to inflict injury." *Id.* (quoting *Clemmer*, 22 Cal.3d at 887). Accordingly, the motion cannot be granted on this ground.

## IV. CONCLUSION

The Court finds plaintiffs' non-intentional tort claims are preempted by the exclusive remedy provision of workers' compensation. Further, plaintiffs' intentional tort claims are precluded under the plain language of Policy Exclusion No. 5. For the reasons discussed above, Cybernet's motion for partial summary judgment is **DENIED** and State Fund's cross motion for summary judgment is **GRANTED.**

The parties shall provide a form of judgment approved as to form within **five business days**.

This terminates Dkt. Nos. 61, 64, and 68.

**IT IS SO ORDERED.**

Dated: November 27, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**